# EXHIBIT 2

COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SAN JUAN PART

| | |
|---|---|
| PUERTO RICO ELECTRIC POWER AUTHORITY<br><br>    Plaintiff<br><br>    v.<br><br>VITOL, INC., VITOL S.A., INC.; FIDELITY & DEPOSIT COMPANY OF MARYLAND; CARLOS M. BENITEZ, INC.; JOHN DOE, SURETIES A, B AND C; INSURERS X, Y and Z<br><br>    Defendants | CIVIL NÚM.<br>KAC 2009-1376   901<br><br>RE:   DECLARATORY JUDGMENT REGARDING NULLIFICATION OF CONTRACTS, ACTION TO OBTAIN TITLE, AND DAMAGES<br><br>Stamp Reading:<br>"(illegible first line)<br>(illegible second line)<br>SAN JUAN<br>2009 NOV -4 PM 3:46" |

**COMPLAINT**

TO THE HONORABLE COURT:

Comes now the defendant, the Puerto Rico Electric Power Authority ("the Authority"), through its undersigned legal representation and very respectfully states, alleges and prays:

**JURISDICTION AND VENUE**

1.   This Honorable Court has jurisdiction and venue over  this case pursuant to Articles 5.001 and 5.003 of the Judiciary Act of 2003, 4 L.P.R.A. §§ 24z and 25c and Rules

CERTIFIED To be a correct translation made and/or submitted by the interested party. *Aida Torres*
AIDA TORRES, CERTIFIED INTERPRETER ADMINISTRATIVE OFFICE OF THE UNITED STATES COURT.

2

2.    Based on the facts which hereinafter alleged, there is a substantial controversy between the Authority and the defendants, Vitol, Inc., Vitol S.A., Inc. and their surety companies who have adverse interests, being, therefore, the mechanism of declaratory judgment the adequate procedure to establish the state of the law between the parties. Rule 59 of the Rules of Civil Procedure, 32 L.P.R.A. App. III R. 59, establishes the mechanism of declaratory judgment by providing that the Court of First Instance has the faculty "to declare rights, status and other juridical relations, whether or not another remedy is filed." The cited rule adds that the declaratory judgment "may be either affirmative or negative in form and effect, and shall have the efficacy and effect of definitive judgments or resolutions." Id. See, <u>Charanga v. Pueblo</u>, 109 D.P.R. 641, 653 (1980); <u>Sanchez v. Secretario de Justicia</u>, 157 D.P.R. 360 (2002). See, also, R. Hernandez Colon, <u>Práctica Jurídica de Puerto Rico</u>: <u>Derecho Procesal Civil</u>, 4th ed. San Juan, E. Lexisnexis, 2007, Sec. 6001, p. 492. The only requirement being that there exist between the parties a real controversy exist, not one that is abstract or hypothetical. <u>Asoc. De Vecinos Villa Caparra Inc. v.</u>

3

<u>Iglesia Católica</u>, 117 D.P.R. 346 (1986); <u>Moscoso v. Rivera</u>, 76 D.P.R. 481, 492-493 (1954).

## REGARDING THE PARTIES

3.    The Authority is a public corporation with its own juridical personalty, fiscal and administrative autonomy and the capacity to sue and be sued, created pursuant to Act No. 83 of May 2, 1941, as amended, known as "Law of the Puerto Rico Electric Power Authority ", 22 L.P.R.A. § 191 et seq. The Authority was created for the purpose of conserving, developing and utilizing, as well contributing to the conservation, development and utilization of water and energy resources of Puerto Rico, for the purpose of making its benefits available to the inhabitants of Puerto Rico, in the most comprehensive economical manner, 22 L.P.R.A. § 196.

4.    In accordance with Administrative Order XVI of February 1, 1995, the physical address of the plaintiff is provided hereinafter: PO Box 363928, San Juan, PR 00936-3928. Its telephone number is: (787) 521-4433.

5.    Pursuant to information and belief, the defendant Vitol, Inc., is a corporation organized pursuant to the laws of the State of Delaware, United States of America, which is

4

engaged in supplying fuel. Its known address is: 1100
Louisiana Suite 5500, Houston, Texas 77002. Its telephone
number is (713) 230-1100 and its fax number is (713) 230-
1111. The resident agent of Vitol, Inc. in our jurisdiction
is: The Prentice-Hall Corporation System, Puerto Rico,
Inc., 254 Muñoz Rivera Avenue 8th, San Juan, PR 00918.

6.    Pursuant to information and belief, Vitol, Inc.,
forms part of the corporate conglomerate known as the Vitol
Group, founded around 1966 which is, at the present time,
one of the three largest suppliers of crude in the world.,
with a presence, operations and infrastructure in Geneva,
Singapore, London, Houston and the Middle East, among other
locations. Said corporate group has and has had a growing
participation in the markets that generate energy, natural
gas, and bio-fuels. Pursuant to information and belief,
around 2008, the Vitol Group reported profits in excess of
$150 billion and supplied and transported in excess of 200
million tons of fuel.

7.    Pursuant to information and belief, the defendant
Vitol S.A. Inc. is a corporation organized pursuant to the
laws of Switzerland, which is engaged in supplying fuel. Its

5

known physical address is: 1100 Louisiana Suite 5500, Houston, Texas 77002.   Its known telephone number is: (713) 230-1100 and its fax number is: (713) 230-1111.  Pursuant to information and belief, the resident agent of Vitol Inc. in our jurisdiction is: The Prentice-Hall Corporation System, Puerto Rico, Inc., 254 Muñoz Rivera Avenue 8th, San Juan, PR 00918.

8.   Pursuant to on information and belief, Vitol, S.A., Inc. forms part of the corporate conglomerate known as Vitol Group founded around 1966 which is, at the present time, one of the three largest suppliers of crude in the world, with a presence, operations and infrastructure in Geneva, Singapore, London, Houston and the Middle East, among other locations. Said corporate group has and has had a growing participation in the markets of generation of energy, natural gas, and bio-fuels. Pursuant to information and belief, around 2008, the Vitol Group reported profits in excess of $150 billion and supplied and transported in excess of 200 million tons of fuel.

9.   John Doe is any and all natural or juridical person who co-caused or contributed to the nullification of

6

the contract, the breach of contract and/or the unlawful acts which are subject to this lawsuit which will be discussed hereinafter. Since their identity is not known at the time of filing the Complaint, it is included as an unknown defendant which will be identified with a fictitious name.

10. Fidelity & Deposit Company of Maryland is a surety company organized pursuant to the laws of the State of Maryland, United States of America, authorized to issue compliance or performance bonds in the Commonwealth of Puerto Rico, and its resident agent and endorsed in Puerto Rico is Carlos M. Benitez, Inc. The known address of Fidelity & Deposit Company of Maryland ("Fidelity") in Puerto Rico is the same as its agent and endorser, Carlos M. Benitez, Inc.: 470 Ponce de León Avenue, San Juan, Puerto Rico 00918.

11. Surety Company A, B and C are each and any other entity which issued a performance bond and/or a payment bond to respond in whole or in part for any breach of contract, the collection of monies and/or the damages caused by the

7

facts hereinafter stated.   They are designated in such a manner since their true identity is unknown at this time.

12.   Insurers X, Y and Z are those insurance companies which issued insurance policies in favor of any of the unknown co-defendants or third parties, to cover the risks and/or damages caused as a result of the unlawful acts which are hereinafter stated.   Since their identity is unknown at the time of filing of the Complaint, they are included as unknown co-defendants identified with fictitious names.

## STATEMENT OF FACTS

13.   On November 22, 2006, the Authority awarded RFP Q-22.205*1 for the supply of residual fuel number 6 to the Aguirre Power Plant.   The winning bidder was Vitol S.A., Inc.

14.   As part of said bidding and contract process, on December 20, 2006, Messrs. John D. Zimmerman and Keith Swaby sent a letter to the Authority, on behalf of, respectively, Vitol, Inc. and Vitol S.A., Inc.   Pursuant to the same, they notified the Authority that the commercial activities of Vitol, S.A., Inc. - the winning bidder of the bid - would be transferred to Vitol, Inc. in exchange for the purchase

8

of shares to be issued by the new entity and acquired by the predecessor.    As represented in the letter, this transaction was being done with the approval of the U.S. Internal Revenue Service.    The letter included a copy of the certificate of incorporation of the new entity, Vitol, Inc., dated October 16, 2006 issued by the State of Delaware.

15.    As part of the bidding and contract processes, on December 21, 2006, Antonio Maarraoui, Director of Operations for Latin America, issued a sworn statement on behalf of Vitol, Inc., certifying to the Authority that during the previous ten (10) years, Vitol, Inc., had not been convicted nor had it pled guilty to any felony or misdemeanor which constituted fraud, embezzlement or misappropriation of public funds as listed in Article 3 of Act No. 428 of September 22, 2004, as amended.

16.  On January 23, 2007, the Authority and Vitol, Inc. signed a contract for the supply of distillate fuel number 8  for the Aguirre power plaint, renewable for one (1) additional year.    As of today, said contract has expired.

17.  Subsequently, the Authority held and awarded RFP No. Q-027167 for the supply of light distillate fuel number two, for the Cambalache Power Plant.  The winning bidder of said bid was Vitol, Inc.  This involved a second bid for the same purchase because during a first bid, the prevailing bidder turned out to be an entity by the name of CMA Builders, Inc., who was barred from negotiating with the Authority because it had not complied with the performance bond requirement.

18.  On November 6, 2008, the Authority held RFP No. Q-029458 for the supply of light distillate fuel number two, for the Combinado Cycle Plants in San Juan and Palo Seco. The winning bidder of said bid was Vitol, Inc.  It involved the  a second opening of the same bid, since on May 29, 2008, the first bid had been held, and the same had been awarded to Panama Canal Oil & Bunker, S.A. which, despite numerous extensions to that effect, was barred from signing a contract with the Authority since it failed to comply with the performance bond requirement.

19.  As part of the bidding and contract process, on January 10, 2008, Mr. John D. Zimmerman, in his capacity as

10

Assistant Secretary of Vitol, Inc., issued a document wherein he certified to the Authority that Vitol had filed its income tax returns during the previous five years and that it did not owe any taxes to the Commonwealth of Puerto Rico. In doing so, he stated the following:

> Vitol, Inc. was authorized to do business in Puerto Rico in November 16, 2006 and is the successor to the Puerto Rico business previously conducted by Vitol, SA., Inc. (Vitol Inc. and Vitol SA., Inc. collectively referred to herein as "Vitol")...

> See document entitled "Vitol Inc. Assistant Secretary Certificate" of January 10, 2008 signed by John D. Zimmerman, Assistant Secretary of Vitol, Inc., underscore ours. It is attached as **Exhibit 1.**

20. As part of the bidding and contract process, on January 18, 2008, Antonio Maarraoui, Director of Operations for Latin America, issued a sworn statement on behalf of Vitol, Inc., wherein he certified to the Authority that during the previous ten (10) years, Vitol had not been convicted nor had it pled guilty to any felony or misdemeanor which constituted fraud, embezzlement or misappropriation of public funds as listed in Article 3 of

Act No. 428 of September 22, 2004, as amended.  Said document is attached as **Exhibit 2**.

21. Vitol acknowledged in said sworn statement that the legal prohibition was applicable to its technicians, professionals and subcontractors.  Vitol acknowledged that the obligation to notify PREPA of any change in circumstances which could affect its statement was one of a continuous nature.

22. On January 25, 2008, Vitol issued a second sworn statement through its representative for Latin America, Antonio Maarraoui, certifying once again that it had not been convicted or had pled guilty to the aforementioned crimes.  It was also declared under oath that Vitol had not been convicted nor had it pled guilty to any other crime, whether or not listed in Act 428, whether a felony or a misdemeanor, in any federal or state court of the United States or in any other jurisdiction.  Vitol also declared under oath that to the best of its knowledge, it was not being investigated by any judicial, legislative or administrative authority of Puerto Rico, the United States

or of any other country.   A copy of said document is attached as **Exhibit 3.**

23.  After Vitol had rendered the previous statements, on January 29, 2008, the Authority represented by its then Executive Director Engineer Jorge Alberto Rodriguez, as party of the first part, and as party of the second part, Vitol, Inc. represented by Mr. Antonio Maarraoui, its Director of Operations for Latin America, signed a contract for the supply of light distillate fuel number two for the Cambalache Power Plant at a projected cost of $155,544,900.00, entitled Fuel Purchase Contract Light Distillate No. 2 / Fuel Oil Contract 902-14-07 Cambalache Power Plant."  The contract had a duration of eighteen (18) months and would be subject to two (2) automatic renewals, unless one of the parties provided notification to the contrary with at least one hundred and twenty (120) days advance notice of the termination date.

24.  On the other hand, the January 29, 2008 contract contains a termination clause in its Article II, which is literally transcribed herein, in view of its relevance:

ARTICLE II. Termination

Notwithstanding anything to the contrary in this Contract regarding its term, PREPA may, at any moment, terminate, cancel or accelerate its expiration, after giving the Seller a not less than thirty (30) days prior notice, when in PREPA's judgment, such action responds to PREPA's best interests. Provided that, in the event the Seller fails to comply with any of its obligations under this Contract, PREPA may declare an immediate contract termination, cancellation or rescission, without prior notice to Seller. The exercise of its right to terminate, cancel or rescind the Contact shall not be understood as a waiver by PREPA to any other remedy it may have under this Contract or under the law for delays or breach incurred by Seller in the performance obligations under the Contract. (Underscore ours.)

ARTICLE XXI. Certifications

Previous to the signing of this Contract, Seller will have to submit the following documents or certifications:

A.    Certification by Seller, which indicates that it has filed its Income Tax Returns during the five previous years and that it does not owe taxes to the Commonwealth of Puerto Rico, or is paying such taxes by an installment plan in full compliance with its terms.

B.    [...]

Seller recognizes that submittal of the aforementioned certifications and documents is an essential condition of this Contract, and even in the case that they are partially incorrect, there will be sufficient cause for

14

PREPA to terminate, cancel or rescind that Contract, and Seller have to refund all payments received.

ARTICLE XXIV.  <u>Contingent Fees</u>

[...]

625  <u>Seller represents and warrants that it is authorized to enter into, and to perform its obligations under this Contract and that it is not prohibited from doing business in Puerto Rico or barred from contracting with agencies or instrumentalities of the Commonwealth of Puerto Rico</u>. (Underscore ours.)

ARTICLE XXVII.  <u>Sworn Statement</u>

Previous to the signing of this Contract, the Seller will have to submit a sworn statement that neither Seller nor any of its partners have been convicted, nor have they plead guilty of any felony or misdemeanor involving fraud, misuse or illegal appropriation of public funds as enumerated in Article 3 of Public Law number 428 of September 22, 2004, as amended.

ARTICLE XXVI. <u>Save and Hold Harmless</u>

Seller agrees to save and hold harmless and to indemnify PREPA for all expenses of any nature (including attorneys' fees) incurred by PREPA arising out of damages, caused by Seller, by act or omission, in the performance or nonperformance of its obligations under the Contract.

15

25.  On December 31, 2008, the Authority represented by its then Executive Director, Engineer Juan Alicea Flores, and Vitol, Inc., represented by Mr. Antonio Maarraoui, Director of Operations for Latin America, signed a contract for the supply of light distillate fuel number two, entitled "Fuel Purchase Contract 902-03-08 / Light Distillate No. 2 Fuel Oil San Juan Cycle and Palo Seco Generating Station", at an estimated cost of $255,400,000.00. Said contract would have a duration of one (1) year, renewable for one (1) additional year, unless there was a notification with one hundred and twenty (120) days advance notice, prior to the termination date.

26.  The December 31, 2008 contract contained a termination clause identical to the previous contract in Article II, and in addition, essentially the same relevant terms and conditions contained in the previous contract previously cited, even though the numbering of the articles is different.  Additionally, the December 31, 2008 contract also contains the following relevant clause:

ARTICLE XXV. Code of Ethics

The Seller agrees to comply with the provisions of Act of June 18, 2002, No. 84,

16

which establishes a Code of Ethics of the
Contractors, Suppliers and Economic Incentive
Applicants of the Executive Agencies of the
Commonwealth of Puerto Rico.

27. After the parties had signed the referenced
contracts and commenced to execute the considerations
pursuant to the same, the Authority became aware through the
media that on November 20, 2007, Vitol S.A., Inc., had pled
guilty to *grand larceny* after being accused by the District
Attorney for the District of Mahnattan, New York City. Said
information was not notified in a timely manner to the
Authority by Vitol, Inc. through its own statements, the
corporate successor of the entity that pled guilty, for
purposes of its commercial dealings with the Authority.

28. Pursuant to information and belief, in said case,
the Office of the District Attorney of Manhattan alleged
that, using an associated and/or third party entity, Vitol
S.A. paid in excess of $13 million in bribes to government
officials of Iraq to obtain governmental contracts in
exchange for the same to supply fuel, which in effect it
obtained through bribery, from June 2001 through September
2002. The Office of the District Attorney of Manhattan also
alleged that Vitol made or allowed false representations to

be made to the United Nations, which sponsored a program for the sale of oil in exchange for humanitarian aid for Iraq known as "Oil for Food Programme", by denying that the bribes had occurred.

29. As part of a guilty plea agreement, Vitol made a $13 million restitution to the United Nations Development Fund for Iraq and paid $4.5 million in sanctions or fines to the State of New York.

30. Pursuant to on information and belief, the case of Vitol S.A. was one of several judicial proceedings which resulted from a comprehensive investigation regarding the operation of the humanitarian aid program of the United Nations; an investigation which also resulted in the filing of criminal charges and/or civil claims against Chevron Corp., Coastal Corp., El Paso Corp., and/or their officials.

31. From the previous statement of facts, it appears that as part of the bidding and contract process with the Authority, Vitol Inc., admitted to the Authority in a certification from its Assistant Secretary that it was the corporate successor of Vitol S.A., Inc. with regard to its business dealings in Puerto Rico. However, Vitol, Inc.

18

never disclosed to the Authority the criminal investigation, the processing or the guilty plea of its predecessor Vitol S.A., Inc. in New York for the crime of grand larceny, with regard to the allegations of bribery in obtaining government contracts in foreign countries and the deceit to the United Nations regarding the occurrence of the bribery.

**FIRST CAUSE OF ACTION:**
**DECLARATORY JUDGMENT REGARDING NULLIFICATION**
**OF GOVERNMENTAL CONTRACTS AND THE PROHIBITION TO**
**CONTRACT WITH PUBLIC ENTITIES**

32. The statement of facts contained in paragraph numbers 1 to 31 are incorporated by reference, as if they were transcribed herein.

33. Section 9 of Article VI of the Constitution of the Commonwealth of Puerto Rico provides that:

> Public property and funds shall only be disposed of for public purpose and for the support and operation of institutions of the State and in any case pursuant to law.

> 1 L.P.R.A. Const. CWPR, Art. VI §9,

34. Pursuant to the above, the Government Accounting Law, Act No. 230 of July 23, 1974, as amended, 3 LPRA § 283 et seq., provides in its Article 8 the principle that only fiscal obligations of the Government can be honored if the same are legally contracted:

> 625  All appropriations and funds authorized for
> consideration in a fiscal year, shall be
> applied exclusively to the payment of
> <u>expenses lawfully incurred</u> during the
> respective year, or to the payment of
> <u>obligations legally contracted</u> and duly
> entered in the books of said year (underscore
> ours).

35.  The previously cited provision requires that any disbursement of public funds by the Commonwealth of Puerto Rico, its agencies, public corporations or instrumentalities, should be <u>"legally contracted"</u>, that is, duly authorized by law through legislation, contract, judgment or judicial order.  As to contractual obligations and the extent to which the same are legally contracted, Article 1207 of the Civil Code of Puerto Rico, establishes the following, :

> The contracting parties may establish the
> agreements, clauses and conditions which they
> may deem convenient, <u>provided they are not in
> contravention to the law, moral, or public
> order</u>.

31 L.P.R.A. § 3372, underscore ours.

36.  Our Supreme Court has stated that governmental contracts must fully observe the essence of the principle consecrated in Section 9 of Article VI of the Constitution, that public funds can only be expended for legitimate public

purposes.   It has also stated that the concept of public order of Article 1207 of the Civil Code includes in its content the prohibition of abusive or unfair contractual clauses, as well as the public policy of constitutional ranking which requires the scrupulous use of governmental funds.   Pursuant to the above, in our legal system there governs the public policy that the sound administration of a government entails performing its functions as a purchaser of goods, works and services with the greatest efficacy, for the purpose of protecting the interests and monies of the nation, promoting competition and preventing corruption, "cronysm", prevarication, extravagance, negligence and the risk of noncompliance when executing contracts. Johnson & Johnson v. Municipio de San Juan, 2007 TSPR 61, amended *nunc pro tunc* by 2008 TSPR 6; Colón v. Municipio de Arecibo, 2007 TSPR 61; Cordero v. Municipio de Guánica, 2007 TSPR 24; Empresas Toledo v. Junta, 168 DPR ___ (2006), 2006 TSPR 138; Las Marías Reference Laboratory Corp. v. Municipio de San Juan, 159 DPR 868 (2003); Ríos v. Municipio de Isabela, 159 DPR 839 (2003); BBV v. Municipio de Vega Baja, 154 DPR 53 (2001); Fernández & Guitérrez v. Mun. de San Juan, 147 DPR

21

824, 829 (1999); <u>RBR Construction v. ACT</u>, 149 DPR 836
(1999); <u>De Jesús v. Autoridad de Carreteras</u>, 148 DPR 255
(1999); <u>Hatton v. Mun. de Ponce</u>, 134 DPR 1001, 1006 (1994);
<u>Mar-Mol Co., Inc. V. Administración de Servicios Generales</u>,
126 DPR 864 (1990); <u>Ocasio v. Alcalde de Maunabo</u>, 121 DPR
37, 54 (1988); <u>Morales v. Municipio de Toa Baja</u>, 119 DPR
682, 693 (1987); <u>Justiniano v. ELA</u>, 100 DPR 334 (1971).

37.   As is known, in accordance with this public
policy, governmental contracts in our jurisdiction are
subject to procedural, formal and substantive requirements,
established pursuant to different laws and regulations, so
that said contracts may be effectively monitored and the
public interest protected.

38.   When drafting and awarding governmental contracts,
one must include a series of compulsory clauses or
complementary documents to the contract, required by law and
regulations,[1] geared to guaranteeing compliance by the
governmental contractor with his fiscal responsibilities and

---

[1]See Act No. 9 of July 24, 1952, which creates the Office of the Comptroller, pursuant to Article III, Section 22 of the Constitution; regulations, jurisprudence and other applicable standards; Act No. 12 of July 24, 1985, as amended, the Governmental Ethics Act, 3 LPRA § 1801 et seq., applicable regulations and jurisprudence, as well as other anti-corruption rules.

22

standards of governmental ethics, as essential conditions of the contract.  One of these compulsory clauses is the one involved herein.

39.  Act No. 458 of December 29, 2000, as amended, 3 LPRA § 928 et seq., hereinafter "Act 458", establishes certain requirements which are essential for the governmental contracting.  Said Law is transcribed literally, in what is pertinent, as follows:

### § 928. Prohibition of bid or contract

It is hereby provided that no head of a governmental agency or instrumentality of the Government, public corporation or municipality, or of the Legislature or Judicial Branch may award any bid or contract whatsoever for the rendering of services or the sale or delivery of goods to a natural or juridical person who has been convicted or has plead guilty in a federal or state forum, in any other jurisdiction of the United States of America, or in any other country, to crimes that constitute fraud, embezzlement or misappropriation of public funds listed in section 928b of this title.

### § 928a. Definitions

[...] A "natural person" is any person defined as such in any applicable law, including the Civil Code of Puerto Rico, and includes, but shall not be limited to the president, vice president, director, executive director or any member of a board

of Officials or Board of Directors, or a
person who performs equivalent functions.
<u>Juridical person</u> includes corporations,
professional corporations, civil and
commercial partnerships, special
partnerships, credit unions<u> and any entity
defined as such in any applicable law,
including those that constitute, for these
purposes, an alter ego of the juridical
person or subsidiaries of the same</u>.

## § 928b. Crimes

The crimes for whose conviction the
prohibition set forth in this Chapter will
apply are the following:

625  Grand larceny, in all its modalities.[2]

[...]

For purposes of the federal jurisdiction,
that of the states or territories of the
United States of America, or of any other
country, the prohibition contained in this
chapter shall apply in cases of convictions
for crimes whose constitutive elements are
equivalent to those of the above stated
crimes (footnote ours).

## § 928c. Penalties; rescission of contract

<u>The conviction or guilt for any of the crimes
listed in § 928b of this title will entail,
in addition to any other penalties, **the
automatic rescission of all contracts in
effect**</u> as of that date between the person

---

[2]See the crime of grand larceny in Puerto Rico, 3 L.P.R.A. § 928f, as well as its equivalent in the
State of New York, NY CLS Penal § 155 (2009).

<u>convicted or found guilty and any </u>agencies or instrumentalities of the Commonwealth government, <u>public    corporations,</u> municipalities, the Legislative Branch or the Judicial Branch [...] (emphasis ours.)

## § 928d.  Duration of prohibition

The prohibition for contracting, subcontracting or awarding a bid, contained in this chapter shall have a duration of twenty (20) years, as of the date of the corresponding conviction in cases of felonies, and a duration of eight (8) years in cases of misdemeanors.

## § 928e. Requirement of clause in contract

As of the effective date of this act, all contracts signed by any government agency or instrumentality, public corporation, municipality, or by the Legislative Branch or the Judicial Branch shall include a penal clause or clauses that expressly consign the provisions contained in § 928c of this title. In the event that due to omission or inadvertence, the inclusion of said clause or clauses in the contract in which they should have been included is omitted, the same shall be deemed to have been included in said contract for all legal purposes.

## § 928f. Notification

[...] any natural or juridical person who wishes to participate in the award of a bid or in the granting of any contract with any governmental agency or instrumentality, public corporation or municipality for the rendering of services or the sale or delivery of goods, shall submit a statement sworn before a notary public stating if he/she has been convicted or had plead guilty of the commission of any of the crimes listed in Sec. 928b of this title, or if he/she is under investigation in any legislative, judicial or administrative procedure, whether in Puerto Rico, the United States or any other country, in order to participate in the awarding or granting of any bid or contract, respectively. If the information were in the affirmative, he must specify the crimes for which he/she was found guilty or entered a guilty plea.

## § 928g. Remedies

The remedies granted to the Commonwealth of Puerto Rico in this chapter are in addition to those provided in the Civil Code of Puerto Rico, in particular to causes of action for general fraud, deceit in the negotiation of a contract, deceit in the compliance of the obligations of the contract and of the law, fault *in contrahendo*, false cause, illegal cause, turpis causa, fault or negligence. All of the actions contemplated in the code of laws in effect and those which are added by this chapter shall be deemed to be cumulative, and may be alleged in the alternative. (underscore ours).

40.   From the above it appears that Act 458 establishes an applicable prohibition, in what is relevant, to public corporations, pursuant to which bids or contracts for the purchase of goods or services will not be awarded to natural or juridical persons who have been convicted or who have pled guilty to the crimes indicated in the law, which constitute fraud, theft or misappropriation of public funds. One of the crimes is grand larceny, in any of its modalities, or its equivalent in another federal, state or foreign jurisdiction.

41.   Act 458 requires that all governmental contracts contain a penal clause  which establishes the prohibition, and if the same is not included, it will be deemed as stated in the contract.  The Law also requires that the contractor render a statement in which he/she certifies under oath that he/she has not been convicted or has plead guilty to the crimes listed in the Law, or of equivalent crimes in other jurisdictions, and that he/she is not being investigated by any judicial, legislative or executive authority, within or outside of Puerto Rico.   "If the information were affirmative, the crimes for which he/she was found guilty or

entered a guilty plea <u>shall be</u> stated therein" (underscore ours). For purposes of the Law, corporation is defined to include "those which constitute for these purposes an <u>alter ego</u> of the juridical person or subsidiaries of the same." 3 L.P.R.A. § 928a (underscore ours).

42. Vitol, Inc. admitted in a document signed on behalf of the corporation by its assistant secretary that it was the successor of Vitol SA, Inc. with regard to its businesses in Puerto Rico.   In view of then admission by Vitol, Inc. that it was the successor of the corporation which had plead guilty in the State of New York, Vitol, Inc., it is clear that Vitol, Inc. is legally connected either directly or indirectly to another previously convicted corporation, wherefore it is an "alter ego" of the corporation convicted within the context of Act 458 and it was therefore required to report the conviction in its sworn statements. By remaining silent with regard to the criminal record of its predecessor in the sworn statements, Vitol, Inc. had the intention and/or the effect of circumventing the prohibitions of Act 458 when contracting with the

Authority.  See  <u>Casco  Sales  Company  v.  Municipio  de</u>
<u>Barranquitas</u>, 2007 TSPR 228.

43.  In the case of <u>C. Santisteban, Inc. v. Municipio</u>
<u>de Guayanilla</u>, 2002 WL 32086544 (TA 2002), Resolution of the
Court of Appeals of December 12, 2002, the Municipality
disqualified the bidder corporation "C. Santisteban, Inc."
on the grounds that "Clemente Santisteban, Inc." had been
accused of and had pleaded guilty in the federal court of
several  charges  of  making  false  statements.   The
disqualified  contractor  challenged  the  actions  of  the
Municipality in concluding that the two corporations were
the same entity.  The Court noted that the administrative
record was comprised of  dozens of documents and hundreds of
pages  in  which  the  corporation  had  represented  to  the
Municipality in governmental documents and in other manners
that the two corporations were the same entity.  The Court
of Appeals resolved, citing the definition of "juridical
person"  of  Act  458  as  including  all  entities  which
constitute  an  "alter  ego"  of  the  same,  that  the
determination of the Municipality of concluding that it was
in fact one entity was upheld.  In doing so, the Court of

29

Appeals validated the faculty of the Municipality to refuse to contract with a party for legitimate reasons of sound administration and the protection of public funds.

44. The case of Costa Azul v. Comisión de Seguridad, 2007 WL 1364319 (2007), is distinguishable from the present case in that it involved issues where a corporation was obligated to report the conviction of one of its former directors.[3]   On the other hand, the decision in Costa Azul recognizes that one of the purposes of Act 458 is to avoid "the risk of inadvertently contracting with natural or juridical persons which may have direct or indirect ties to another that was previously convicted, thereby eluding the governmental intention of contracting with persons or corporations of proven and manifest honesty." Costa Azul v. Comisión de Seguridad, 2007 WL 1364319 (2007), citing the

---

[3]Even though the decision in Costa Azul, *supra*, resolved that Act 458 in and of itself does not require that the juridical persons report if the natural persons behind the corporation have been convicted, investigated or have plead guilty, here it does not involve a conviction of a shareholder or director, but of an alter ego, or a related corporate figure.   Additionally, contrary to the Costa Azul case, in the present case, the Authority contractually required Vitol to comprehensively certify the absence of conflict, providing as a condition in the contract that it certify the absence of criminal records for the bidding corporation as well as for the affiliated persons or entities ("neither the Seller nor any of its partners have been convicted...", article XXVII of the contract, ante), a condition which Vitol accepted by signing the contract. This case is distinguishable from Accumail de Puerto Rico v. Junta de Subastas, 2007 TSPR 70, under the same principles.

statement of purposes of Act No. 428 of September 22, 2004, Law of Puerto Rico, at page 2918.

45. Local jurisprudence has also resolved that courts should cautiously examine the relevant facts regarding the awarding, compliance and execution of governmental contracts when adjudicating their nullification or validity. Lugo Ortiz v. Municipio de Guayama, 2004 TSPR 166, and that "the courts should be vigilant to prevent the thwarting of legal provisions geared to ensuring the soundest public administration." Las Marías, supra, p. 5, citing Hatton and Ocasio supra. Certainly, the fact that Vitol did not disclose in the sworn statement the guilty plea of its predecessor corporation and the possibility that it would change its corporate name, totally or partially, to circumvent the prohibition of the law, are factors with regard to the execution of the contracts which suggest that Vitol violated the principle of constitutional rank consecrated in Act 458 of promoting honesty in governmental contracts.

46. In view of the above, the Authority respectfully requests from this Honorable Court that it issue a

declaratory judgment declaring that Vitol, Inc. is an alter ego of Vitol, S.A., Inc. within the context of Act No. 458 of December 29, 2000, as amended, 3 LPRA § 928 et seq. and the doctrine of C. Santisteban, Inc. v. Municipio de Guayanilla, 2002 WL 32086544 (TA 2002), Casco Sales v. Departamento de Agricultura, 2005 WL 3752904 (TA 2005) and Casco Sales Company, Inc. v. Gobierno Municipal de Barranquitas, 2007 TSPR 288.

47. The Authority respectfully requests from this Honorable Court that it issue a declaratory judgment declaring contracts Nos. 902-14-07 of January 29, 2008 and 902-03-05 of December 31, 2008 between the Authority and Vitol, Inc. for the supply of light distillate fuel number two null and void, as a result of Vitol, Inc. and Vitol SA, Inc. having acted in contravention to the clear language and provisions of Act No. 458 and contrary to the public policy of the Commonwealth of Puerto Rico, which prohibits governmental contracts with juridical entities or their alter egos which have been found guilty or have pled guilty to certain crimes.

48.  The Authority respectfully requests from this Honorable Court that it issue a declaratory judgment also decreeing that since this involves contracts that are null in violation of Act 458, the same are automatically unenforceable as of the date of the conviction and that its respective clauses of automatic renewal do not have and will not have any legal effect whatsoever.

49.  Finally, the Authority respectfully requests from this Honorable Court that it issue a declaratory judgment also decreeing that Vitol S.A., Inc. as well as its business successor for Puerto Rico and alter ego, Vitol, Inc., are appliedthe prohibition to contract, subcontract or bid with the Puerto Rico Electric Energy Authority for twenty (20) years, as of the date of their guilty plea in the State of New York on December 20, 2007.

**SECOND CAUSE OF ACTION:**
**DECLARATORY JUDGMENT REGARDING THE NULLIFICATION OF CONTRACTS *TURPIS CAUSA* AND/OR ILLEGAL CAUSE AND ACTION TO OBTAIN TITLE UNDER ARTS. 1227, 1257 AND 1258 OF THE CIVIL CODE**

50.  The statement of fact and of Law contained in paragraphs numbers 1 to 49 are adopted by reference as if they were transcribed herein.

51.  Our  Civil  Code  provides  that  contracts  are perfected by mere consent, and as of then they are binding, not only as to compliance with what was expressly agreed, but also to all of the consequences which, pursuant to their nature, are in accordance with good faith, use, and the law. Art. 1210 of the Civil Code. 31 LPRA § 3375.

52.  Thre  is  no  contract  unless  there  concur  the following requirements: (1) the consent of the contracting parties, (2) a definite object which is the subject of the contract  and  (3)  the  cause  of  the  obligation  that  is established.  Art. 1213 of the Civil Code, 31 LPRA § 3391. Contracts  shall  be  binding,  provided  there  concur  in  the same the essential conditions for their validity.  Art. 1230 of the Civil Code, 31 LPRA § 3451.   Otherwise, contracts in which these three requirements concur, may be annulled, even when there is no injury to the contracting parties, whenever they suffer from any of the defects which invalidate them pursuant to law. Art. 1252 of the Civil Code, 31 LPRA § 3511.

53.  In onerous contracts cause is understood to mean, for each contracting party, the consideration or promise of something or a service by the other party is understood as

34

a consideration for each contracting party. Art. 1226 of the Civil Code, 31 LPRA § 3431. Even though the cause is not stated in the contract, it is presumed that it exists and that it is legal, unless the debtor proves otherwise. Art. 1229 of the Civil Code, 31 LPRA § 3434.

33. Even when the cause is considered legal, our Civil Code regulates several instances of defects in the cause for the contract, such as the illicit cause and torpis causa. Illegal cause is understood to mean one which is contrary to the law or morals. Art. 1227 of the Civil Code, 31 LPRA §3432. *Torpis causa* is conduct which is contrary to justice, honesty, modesty or good morals.[4] It involves a question of degree - the illicit consideration constitutes a crime per se, *torpis causa* is an immoral or dishonest act.

55. In the present case, when Vitol, Inc. acquired the obligation to provide fuel because its corporate predecessor or alter ego had been convicted of the crime of misappropriation, without reporting this fact to the Authority, Vitol, Inc. incurred in an illicit cause or *torpis causa* which violates the soundes principles of

---

[4] See the definition of "moral turpitude" in Ignacio Rivera García, Diccionario de Términos Jurídicos, Equity Publishing Corporation, 1981, at page 290.

honesty and moral integrity which govern our contractual legal system.

56. Even though as a general rule, the action for nullification of a contract entails the return of the considerations of each party, by way of exception, in cases of illicit cause or *torpis causa* attributable to only one of the parties, the party who has been aggrieved is entitled to be <u>unilaterally restored</u> for the value of its consideration. Let us see:

> **Art. 1257.** When the nullification arises from an illegality of the cause or the object of the contract, if the fact that constitutes a crime or violation is common to both contracting parties, they shall have no action against each other, and proceedings shall be instituted against them, giving also to the things or amount which may have been the object of the contract the application prescribed in the Penal Code with regard to the goods or instruments of the crime or fault.
>
> This provision is applicable to the case where there is a crime or fault on the part of only one of the contracting parties; <u>but the who the one who is not guilty may claim what he may have given, and shall not be obligated to fulfill what he may have promised</u>.
>
> **Art. 1258.** If the fact which constitutes the *torpis causa* does not constitute either a crime or fault. the following rules shall be observed:

(1)  When both parties are guilty, neither of them can recover what he may have given pursuant to the contract, nor claim compliance of what the other party may have offered.

(2)  <u>When only one of the contracting parties is involved, he cannot recover what he may have given pursuant to the contract, nor require ocmpliance of of what he may have been offered.  The other party, who has had nothing to do with the *torpis causa*, may claim what he may have givenm, without being obligated to fulfill what he has offered.</u>

Art. 1258 of the Civil Code, 31 L.P.R.A. § 3517, underscore ours.

57.  In view of what is stated above, the Authority respectfully requests from this Honorable Court that it issue a declaratory judgment declaring contracts Number 902-14-07 of January 29, 2008 and contract Number 902-03-05 ofed December 31, 2008 between the Authority and Vitol, Inc. for the supply of light distillate fuel number two null, pursuant to Article 1227 of the Civil Code of Puerto Rico, 31 LPRA § 3432, since it involves contracts with an illicit cause and/or *torpis causa* which do not produce any legal effect whatsoever.

58.   The Authority respectfully requests from this Honorable Court that pursuant to Articles 1257 and 1258 of the Civil Code of Puerto Rico, 31 LPRA §§ 3516-3517, it

grant the unilateral repossession and/or restitution of all public funds disbursed to Vitol, Inc. through the aforementioned contracts, and exempt the Puerto Rico Electric Power Authority from complying with the same. At this time, the public funds whose restitution is being requested are estimated in $2,328,451,132.65. The public funds pending disbursement, which the Authority is requesting that the Court exempt the Authority from paying, are estimated at $4,000,000.00.

THIRD CAUSE OF ACTION:
DAMAGES UNDER ART. 1060 OF THE CIVIL CODE CAUSED BY DECEIT
IN THE CONTRACTING PROCESS

59. The statements of fact and of law stated in paragraph numbers 1 to 58 are adopted by reference as if they were transcribed herein.

60. Consent in the contracting process is deemed void when given by error, under violence, by intimidation, or deceit. Art. 1217 of the Civil Code, 31 LPRA § 3404. *Dolus* is defined as deceit, simulation or fraud which influences the will of the other party to execute juridical acts or transactions. It is also defined as the malicious violation

38

in the compliance of contractual obligations.[5]  There is consent that is voided by deceit when the words or insidious machinations by one of the contracting parties induces the other party to enter into a contract which, without them, he would not have done so.  Art. 1221 of the Civil Code, 31 LPRA § 3408.

61.   In this case, deceit was committed in the contracting process when Vitol certified under oath to the Authority that it had not been convicted of any crime comprised in the prohibition to contract with the government, when it knew or should have known that its corporate predecessor for its business dealings in Puerto Rico and/or its alter ego, had pled guilty to a crime to which the prohibition applied and said prohibition was extensive to its corporate successor.  Had there been no negative statement by the contractor, the Authority would not have contracted with the corporation, wherefore the consent was defective due to an incomplete and/or dishonest statement of the contractor.

---

[5]Ignacio Rivera Garcia, Dictionary of Juridical Terms, Equity Publishing, 1981, p. 78.

62.   Those who in fulfilling their obligations incur in deceit, negligence, or delay, are subject to indemnification for the damages caused. Art. 1054 of the Civil Code, 31 LPRA § 3018.   As a general rule, the indemnification for damages comprises not only the value of the loss which it has suffered, but also of the profit which the creditor failed to obtain. Art. 1059 of the Civil Code, 31 LPRA § 3023. Generally, the damages for which a debtor is responsible are those which are foreseeable at the time of entering into the obligation. Nevertheless, if it is proven that there was *dolus* (fraud or deceit), the debtor is required to indemnify the other party for all foreseeable and unforeseeable damages:

> **Art. 1060.** The damages for which a debtor in good faith is liable, are those foreseen or which may have been foreseen, at the time of constituting the obligation, and which are the necessary consequence of its lack of compliance.
>
> In cases of *dolus*, the debtor shall be liable for all those which are clearly derived from the lack of compliance of the obligation.
>
> Art. 1060 of the Civil Code, 31 LPRA § 3024.

63.   Based on the above, the Authority respectfully requests from this Honorable Court that it grant this cause

of action for damages in the contract and, as a result thereof, issue a judgment ordering Vitol to pay for the damages caused by contract numbers 902-14-07 of January 29, 2008 and 902-03-05 of December 31, 2008 between the Authority and Vitol, Inc. for the supply of light distillate fuel number two, and the costs incurred and to be incurred by the Authority in substituting Vitol, Inc. as the supplier of fuel, including the costs of the bids, administrative costs and any increase in cost resulting in the acquisition of fuel, among others. The costs associated with having a new bid for the fuel which Vitol, Inc. was to supply under the contracts to be declared rescinded are estimated in the amount of $30,000.00. The additional costs which the Authority will have to incur in substituting Vitol, Inc. as its fuel supplier under the periods under contract cannot be precisely estimated at this time, since it will depend on the conditions of the market and of the proposals from the bidders who appear at the bidding process, but they are calculated in an amount of not less than an additional $5,030,000.00.

### THIRD CAUSE OF ACTION:
### DAMAGES PURSUANT TO ART. 1054 OF THE CIVIL CODE
### CAUSED BY BREACH OF CONTRACT

64.  The statements of fact and of law indicated in paragraph numbers 1 to 63 are adopted by reference as if they were transcribed herein.

65.  Our Civil Code provides that those who in compliance with their obligations incur in fraud, negligence or delay, are subject to indemnifying the damages caused. Art. 1054 of the Civil Code, 31 LPRA § 3018.

66.  Should it be understood that the failure of Vitol, Inc. and Vitol S.A., Inc. to report the declaration of culpability of its predecessor does not constitute deceit in the contracting process, which is denied, it is alleged that the same constituted a breach of contract because of the intervention of fault or negligence which gives rise to the compensation for damages which is estimated in $5,000,000.00.

### FOURTH CAUSE OF ACTION:
### LIABILITY OF THE SURETY COMPANY(IES)

67. The statement of facts and of law stated in paragraphs numbers 1 to 66 are adopted by reference as if they were transcribed herein.

68 Co-Defendants Fidelity and Surety Companies A, B and C became severally liable to the Authority to comply with the aforementioned contracts, in the event Vitol, Inc. failed to do so. Said Surety Companies issued the corresponding bonds in consideration for a premium, not based on mere liberality, wherefore the terms of the bonds should be interpreted liberally and in favor of the secured party, namely the Authority.

69. For contract 902-14-07, Fidelity issued Performance Bond LPM 8796881 for $7,777,245.00 effective from 1/2/09 to 1/2/10, which bond was in turn endorsed by Carlos M. Benítez, Inc. This contract and the bond is for a period of 18 months with automatic renewals of 6 months.

70. For contract 902-03-08, Fidelity issued Performance Bond LPM 8796881 for $12,700,000.00 effective from 1/2/08 to 1/2/09 which bond was in turn endorsed by

Carlos M. Benítez, Inc.  This contract and the bond is for a period of 18 months with automatic renewals of 6 months.

71.  Pursuant to the requirements of the Contract and the Bond, Fidelity, Carlos M. Benítez, Inc. and Surety Companies A, B and C respond to the Authority for default of Vitol, Inc.  Therefore, they are severally liable to the Authority for each and every one of the amounts claimed in the present complaint.

### FIFTH CAUSE OF ACTION: LIABILITY OF THE INSURERS

72.  The statement of facts and of law stated in paragraphs numbers 1 to 71 are adopted by reference as if they were transcribed herein.

73.  Co-defendant Insurance Companies X, Y and Z are insurance companies that may have issued a policy covering the facts and omissions related to and attributable to the other defendants in this lawsuit.  Said Insurance Companies issued policies in consideration for a premium, which provide coverage for the damages previously described.

74.  Pursuant to the requirements of the Contract and the insurance policy(ies), Insurance Companies X, Y and Z are liable to the Authority for any unlawful acts by Vitol.

44

Therefore, they are jointly and severally liable to the Authority for each and every one of the amounts claimed in the present complaint.

## SIXTH CAUSE OF ACTION:
## ATTORNEYS FEES AND LITIGATION COSTS

75. The statement of facts and of law stated in paragraphs numbers 1 to 74 are adopted by reference as if they were transcribed herein.

76. In addition to the amounts claimed above, the plaintiff requests that this Honorable Court grant it a reasonable amount for court costs and attorneys fees for temerity, pursuant to Rule 44.1 of the Rules of Civil Procedure, which are estimated at $100,000.00.

77. The prevailing judicial standards establish that an action which warrants attorneys fees is any which makes necessary a lawsuit which could have been avoided, which prolongs it unnecessarily or which produces the need for the other party to incur in inevitable expenses. Rivera v. Tiendas Pitusa, Inc. 148 DPR ___ (1999), TSPR 990-103.

45

### SEVENTH CAUSE OF ACTION:
### LEGAL INTERESTS

78. The statement of facts and of law stated in paragraphs numbers 1 to 77 are adopted by reference as if they were transcribed herein.

79. The Authority respectfully requests from this Honorable Court that it grant legal interests to be calculated on the amount of the judgment as of the date the same is issued until it is paid in full. Rule 44.3(a) of the Rules of Civil Procedure.

80. The Authority respectfully requests from this Honorable Court that it impose legal interests for temerity as of the date of the filing of the complaint until the date of the judgment, to be calculated based on the amount of the judgment. Rule 44.3(b) of Civil Procedure.

**WHEREFORE**, it is very respectfully requested from this Honorable Court that it take judicial notice of the above and, after the corresponding procedure, it issue judgment granting this Complaint, and as a result thereof, it issue a declaratory judgment decreeing the nullification of contracts 902-03-08 and 902-14-07 between the Authority and Vitol; and condemn Vitol, Inc., Vitol, S.A., Inc. and the

46

other co-defendants to jointly and severally pay the amounts claimed, granting costs, interests and attorneys fees.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, November 4, 2009.

**ROBERTO CORRETJER PIQUER LAW FIRM**
Attorneys  for  the  Electric  Power
Authority
625 Ponce de Leon Ave.
San Juan, PR 00917-4568
Tels. 787-751-4618/787-751-4568
Telefax: 787-759-6503
admin@corretjerlaw.com

By:  s/illegible
     Roberto Corretjer Piquer
     PR Bar Assn. No. 7505

By:  s/illegible
     Leticia M. Avilés Matos
     PR Bar Assn. No. 13,389

ELISA FUMERO PEREZ
PR Bar Assn. No. 8,967
Director of Juridical Affairs
Puerto Rico Electric Power Authority
PO Box 364267
San Juan, PR 00936-4267
Tel. (787) 521-3344
Fax (787) 521-4430
e-fumero-djur@prepa.com

Treasury Stamps for $20.00
Nos. C000905811-5812 and
Notarial Stamps for $2.00
affixed to this page

TRANSLATOR's NOTE: All pages of the original of this document contain a stamp reading: "Commonwealth of Puerto Rico, General Court of Justice, Court of First Instance, Superior Part of San Juan"

CERTIFIED To be a correct translation
made and/or submitted by the interested
party. _illegible_
AIDA TORRES, CERTIFIED INTERPRETER
ADMINISTRATIVE OFFICE OF THE UNITED
STATES COURT.

Last page after Sworn Statement consists of
six (6) cancelled Internal Revenue Stamps
as follows:

1.    Value $10.00 No. 3-0037076-1 Dated 12/11/2009
      Internal Revenue Stamp 50114-2009-1211-52188554

2.    Value $1.00 No. 2-0022502-1 Dated 12/04/2009
      Internal Revenue Stamp 50114-2009-1204-66436424

3.    Value $1.00 No. 3-0037078-3 Dated 12/11/2009
      Internal Revenue Stamp 50114-2009-1211-52573410

4.    Value $1.00 No. 3-0037030-3 Dated 11/23/2009
      Internal Revenue Stamp 50114-2009-1123-50320939

5.    Value (Cancelled stamp over value) No. 3-0037079-1
      Dated 12/11/2009
      Internal Revenue Stamp 50114-2009-1204-52733924

6.    Value $0.50 No. 3-0037080-1 Dated 12/11/2009
      Internal Revenue Stamp 50114-2009-1211-52899762

                              11 DEC 2009
                          CERTIFICATION
            I certify that this is a true and correct
            copy of the original which is in the
            record and I issue the same at the request
            of
                    INTERESTED PARTY
            ☒ After payment of fees
            ☐ For official use, exempt of fees
                    ATTY. REBECCA RIVERA TORRES
                        Regional Clerk
                        s/illegible
                By: Marianet Piñeiro Báez
                    Deputy Clerk

TRANSLATOR's NOTE: All pages of the original of these exhibits
to the Complaint contain a stamp reading: "Commonwealth of Puerto
Rico, General Court of Justice, Court of First Instance, Superior Part
of San Juan"

CERTIFIED To be a correct translation
made and/or submitted by the interested
party. *Aida Torres*
AIDA TORRES, CERTIFIED INTERPRETER
ADMINISTRATIVE OFFICE OF THE UNITED
STATES COURT.